IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| WILLIAM HUTH, et al.,<br><br>        **Plaintiffs**,<br><br>v.<br><br>**GUANGDONG MIDEA AIR-CONDITIONING EQUIPMENT CO., LTD., also known as GD MIDEA AIR-CONDITIONING EQUIPMENT CO., LTD., et al.**,<br><br>        **Defendants**. | Case No. 23-4031-DDC-GEB |

**MEMORANDUM AND ORDER**

  In this product liability case, plaintiffs William and Deborah Huth allege that a malfunctioning dehumidifier caught fire and caused extensive damage to their property. Defendants removed the case to federal court, invoking the court's diversity jurisdiction because the parties have diverse citizenship and plaintiffs sought more than $75,000. Over a year after removal, plaintiffs amended their Complaint and now they seek less than $75,000. Plaintiffs thus moved to remand, asserting that their post-removal reduction of the amount-in-controversy divests the court of diversity jurisdiction. But it's well established that only the amount-in-controversy at removal matters and the court needn't consider any post-removal reduction to that amount. So the court declines to remand this action.

  For their part, defendants Midea Group Co., Ltd (Midea Group) and Guangdong Midea Air-Conditioning Equipment Co., Ltd. (GD Midea) have moved for dismissal, asserting that the court lacks personal jurisdiction over them. Midea Group, a Chinese corporation, asserts that it

doesn't manufacture or distribute dehumidifiers and never has directed its activities at Kansas. GD Midea, also a Chinese corporation, admits that it manufactured the dehumidifier, but asserts that it sold the dehumidifier to a third party in China, who then sent the dehumidifier to the United States. GD Midea thus also asserts that it has never directed any activities at Kansas. In response to defendants' affidavits, plaintiffs proffer nothing—no affidavits, no other written materials, no jurisdictional allegations, nothing. Instead, plaintiffs make a thin request for jurisdictional discovery. Unhappy with plaintiffs' threadbare jurisdictional allegations, the United States Magistrate Judge denied plaintiffs' discovery request. Plaintiffs haven't asked this court to review that decision. The court concludes that plaintiffs have failed to make a prima facie case of personal jurisdiction and grants defendants' Motions to Dismiss.

The court explains these conclusions, below.

### I.     Factual & Procedural Background

In November 2019, a dehumidifier malfunctioned, caught fire, and caused extensive smoke damage to plaintiffs' property. Doc. 51 at 1 (Am. Compl. ¶ 2). Plaintiffs allege that defendants manufactured the dehumidifier and thus are liable for the damage. *Id.* at 2 (Am. Compl. ¶ 3). In December 2022, plaintiffs sued defendants in state court. Doc. 1-1 (Pet.) Specifically, plaintiffs sued Midea America Corp. (Midea America), GD Midea, and Midea Group. *Id.* at 1. In 2023, plaintiffs served Midea America, and Midea America removed the case to this court.[1] *See* Doc. 1 (Notice).

---

[1]    Defendants GD Midea and Midea Group later consented to the removal. Doc. 24; Doc. 25; *see also* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.").

In its Notice of Removal, Midea America invoked this court's diversity jurisdiction. *Id.* at 2 (Notice ¶ 5). Plaintiffs are Kansas citizens, and Midea America alleged that it is a Florida corporation with its principal place of business in New Jersey, while Midea Group and GD Midea are Chinese corporations with their principal places of business in China. *Id.* (Notice ¶¶ 6, 8–9). At the time of removal, plaintiffs sought to recover $393,695.54. *Id.* (Notice ¶ 10). Plaintiffs also alleged that defendants had violated the Kansas Consumer Protection Act (KCPA), which carries a maximum fine of $10,000. *Id.* Based on these allegations, Midea America concluded that this case met the requirements for diversity jurisdiction: (1) complete diversity and (2) an amount in controversy over $75,000. *Id.* (Notice ¶ 5).

In November 2024, however, plaintiffs amended their Complaint and lowered their damages request, asking for only $62,400 in property damage and a $10,000 KCPA fine. Doc. 51 at 1, 4 (Am. Compl. ¶¶ 2, 23). Plaintiffs now have filed a Motion to Remand, asserting that their reduced damages request brings this case below the $75,000 threshold for diversity jurisdiction. Doc. 52 at 1. The case's two remaining[2] defendants, Midea Group and GD Midea, oppose remand. Doc. 62. And they have filed their own motions—Motions to Dismiss for lack of personal jurisdiction. Doc. 53; Doc. 55.

The court analyzes these three pending motions, below, starting with plaintiffs' Motion to Remand. It then turns to Midea Group's Motion to Dismiss, and concludes with GD Midea's Motion to Dismiss.

---

[2] The court previously dismissed Midea America from this case after concluding it lacked personal jurisdiction over Midea America. Doc. 22.

II.     **Motion to Remand**

Plaintiffs move to remand this action back to state court because their Amended Complaint seeks less than $75,000. Doc. 52. The court begins with the governing legal standard.

Defendants may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As relevant here, Congress has given federal courts jurisdiction over diversity cases: cases between "citizens of a State and citizens or subjects of a foreign state" whose dispute exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(2). That $75,000 amount-in-controversy requirement provides the fodder for plaintiffs' remand motion.

Plaintiffs allege that their post-removal amendment—revising the amount-in-controversy to less than $75,000—deprives this court of diversity jurisdiction. But in "removed cases, an amendment reducing the alleged amount-in-controversy to below the statutory threshold—like a post-filing development that makes recovering the needed amount impossible—will usually not destroy diversity jurisdiction." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 38 n.8 (2025). This rule comes from the Supreme Court's decision in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, where the Court held that "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." 303 U.S. 283, 293 (1938). Consequently, our Circuit has held that once "jurisdiction has attached, events subsequently

4

defeating it by reducing the amount in controversy are unavailing." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (citing *St. Paul*, 303 U.S. at 288–89).

Here, at removal, plaintiffs' Petition sought well over $75,000: $393,695.54 in property damage and $10,000 in KCPA fines. Doc. 1-1 at 1, 4 (Pet. ¶¶ 2, 23). The case thus satisfied the amount-in-controversy requirement when removed and no more is required to confer diversity jurisdiction.

Seeking to dodge this evident outcome, plaintiffs urge the court not to follow binding Circuit precedent. Doc. 52 at 3. Plaintiffs instead rely on 28 U.S.C. § 1447(c), which provides that if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Congress added this language in 1988. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 873 & n.2 (6th Cir. 2000) (tracing history of § 1447(c)). In plaintiffs' view, the 1988 amendment—which requires remand any time the court loses subject matter jurisdiction—supersedes the Supreme Court's rule in *St. Paul*—which freezes the amount-in-controversy at the time of removal. Doc. 52 at 3. To support this idea, plaintiffs cite *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007).

On a high level, *Powerex* asked whether a Canadian energy company qualified as a foreign state such that the company could remove a civil action to federal court. *Id.* at 226–27. As relevant here, one party in *Powerex* had suggested that § 1447(c) only requires remand if a petition has subject-matter jurisdiction defects at removal. *Id.* at 230. The Court rejected this interpretation, explaining that "[n]othing in the text of § 1447(c) supports the proposition that a remand for lack of subject-matter jurisdiction is not covered so long as the case was properly removed in the first instance." *Id.* Seizing on this double negative from *Powerex*, plaintiffs insist that § 1447(c) requires federal courts to consider whether post-removal events divest them

5

of subject matter jurisdiction. Under this interpretation, the amount-in-controversy is not frozen at removal and a post-removal amendment to the amount-in-controversy matters.

Unfortunately for plaintiffs, the Tenth Circuit has not adopted their interpretation of § 1447(c). Indeed, plaintiffs acknowledge that our Circuit still follows *St. Paul*. Doc. 52 at 3. "Absent *en banc* reconsideration or an intervening Supreme Court decision, this court is bound by the precedent set forth by the Tenth Circuit Court of Appeals[.]" *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 311 F. Supp. 2d 1197, 1210 n.24 (D. Kan. 2004). And, since *Powerex*, other Circuits have continued to follow the *St. Paul* rule. *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016) ("[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal."); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010) ("We write today to make clear that a plaintiff cannot seek to deprive a federal court of jurisdiction by reducing her demand to $75,000 or less once the jurisdictional threshold has been satisfied."). What's more, the Supreme Court favorably cited the *St. Paul* rule just last term. *Royal Canin*, 604 U.S. at 38 n.8. *Powerex* thus stands for the proposition that *some* post-removal events can affect the existence of subject matter jurisdiction. But it doesn't mean that post-removal decreases in the amount-in-controversy deprive the court of subject matter jurisdiction.

In sum, the court concludes it is bound by our Circuit's precedent to apply the *St. Paul* rule, and *Powerex* doesn't change that duty. Plaintiffs' Petition, at removal, alleged more than $75,000, satisfying the amount-in-controversy and conferring the court with diversity jurisdiction. The court thus denies plaintiffs' Motion to Remand (Doc. 52). The court now turns its attention to Midea Group's motion.

**III.     Midea Group Motion to Dismiss**

Midea Group has filed a Motion to Dismiss (Doc. 53), arguing that our court lacks personal jurisdiction over it because it is a foreign business entity with no Kansas operations, and it didn't manufacture, distribute, or sell the dehumidifier at issue. Doc. 54 at 1. The court begins it analysis of Midea Group's motion with a brief summary of personal jurisdiction.

"'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). Kansas law authorizes courts to exercise jurisdiction "to the full extent permitted by due process." *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)); *see also* Kan. Stat. Ann. § 60-308(b)(1)(L), (b)(2). "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "'The constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum State.'" *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 108–09 (1987) (quotation cleaned up) (plurality opinion) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Personal jurisdiction can qualify as either general or specific. The parties agree that general personal jurisdiction doesn't apply here, so the court addresses only specific personal jurisdiction. For "a court 'to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum.'" *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1308 (10th Cir. 2024) (quotation cleaned up) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)). "In other words, there must be 'an affiliation between the

7

forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb*, 582 U.S. at 262 (quotation cleaned up) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The specific-jurisdiction inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.'" *XMission*, 105 F.4th at 1308 (quoting *Daimler*, 571 U.S. at 126). "'The contacts needed for this kind of jurisdiction often go by the name "purposeful availment."'" *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). That is, a defendant must purposefully avail itself of the benefits and protections of the forum state's laws. And so specific jurisdiction arises when "'(1) the out-of-state defendant purposefully directed its activities at residents of the forum State, and (2) the plaintiff's alleged injuries arise out of or relate to those activities.'" *Id.* (quotation cleaned up) (quoting *XMission L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020))

The plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179–80 (10th Cir. 2014). Where, as here, a defendant asks the court to decide a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, a plaintiff must make no more than a prima facie showing of jurisdiction. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings*, 149 F.3d at 1091.

Here, Midea Group insists that it has no claim-related contacts with Kansas because it had nothing to do with the Frigidaire dehumidifier that malfunctioned and damaged plaintiffs'

8

property. And Midea Group has submitted an affidavit from its Financial Management Expert in support. *See* Doc. 53-2 (He Yunchang Aff.). The affidavit asserts that Midea Group, a Chinese company, "does not itself design or manufacture any product." *Id.* at 2 (He Yunchang Aff. ¶ 12). Its subsidiaries design and manufacture products, but Midea Group itself does not. *Id.* And Midea Group never has operated any places of business in the United States. *Id.* (He Yunchang Aff. ¶ 13). Nor has Midea Group ever sold, imported, or shipped any Frigidaire-branded dehumidifiers to or within the United States. *Id.* (He Yunchang Aff. ¶ 15). In sum, Midea Group's proffered affidavit has demonstrated it didn't "'purposefully direct[] its activities at residents of'" Kansas and so plaintiffs' injuries could not have "'arise[n] out of or relate to those activities.'" *XMission, L.C.*, 105 F.4th at 1308 (quotation cleaned up) (quoting *Fluent LLC*, 955 F.3d at 840).

Plaintiffs proffer nothing in response—no written materials of any kind—to Midea Group's affidavit. Instead, plaintiffs request jurisdictional discovery. Doc. 59 at 1. Earlier, plaintiffs separately moved for jurisdictional discovery, Doc. 60, and the United States Magistrate Judge assigned denied the motion, Doc. 69. Plaintiffs haven't objected to that order.[3] And plaintiffs' Amended Complaint contains zero jurisdictional allegations. Plaintiffs thus have failed to demonstrate any facts that, if true, would support our court exercising jurisdiction over Midea Group.

The court grants Midea Group's Motion to Dismiss (Doc. 53).

---

[3] While the decision would belong to our Circuit, the court notes that this failure to object may mean plaintiffs have failed to preserve this issue for appeal. *Carper v. Peterson*, No. 23-1005, 2023 WL 4485618, at *5 (10th Cir. July 12, 2023) (considering plaintiff's challenge—to district court denial of request for jurisdictional discovery—waived because plaintiff failed to object to magistrate judge's order denying jurisdictional discovery) (citing *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996) ("'[F]ailure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991)))).

IV.     **GD Midea Motion to Dismiss**

Unlike Midea Group, GD Midea—a Chinese company with its headquarters in China—is in the business of designing and manufacturing home appliance products. Doc. 55-2 at 2 (Liu Xiao Aff. ¶ 14). And GD Midea acknowledges that it manufactured the dehumidifier at issue. *See id.* at 3 (Liu Xiao Aff. ¶ 18). GD Midea nonetheless argues that this court lacks personal jurisdiction over it because it only conducts business in China. The court thus applies the specific-personal-jurisdiction standard, articulated above, to GD Midea.

GD Midea submitted an affidavit from one of its employees to support its Motion to Dismiss. *Id.* (Liu Xiao Aff.). According to this affidavit, GD Midea manufactured the malfunctioning dehumidifier in China. *See id.* at 3 (Liu Xiao Aff. ¶ 18). GD Midea sold the dehumidifier to "an Electrolux-affiliated entity in China." *Id.* (Liu Xiao Aff. ¶ 20). This Electrolux-affiliated entity then imported the dehumidifier into the United States. *Id.* (Liu Xiao Aff. ¶ 21). And so, GD Midea asserts, "its contact with the product ended in" China. Doc. 56 at 2. These facts, together, GD Midea contends, mean GD Midea didn't purposefully direct its activities at Kansas, as specific personal jurisdiction requires; a third party sent GD Midea's product to the United States. GD Midea thus has a strong argument that it lacks the necessary connection with this forum because "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286. For our court to have personal jurisdiction over GD Midea, GD Midea must have purposefully directed its dehumidifier-manufacturing-and-selling efforts at Kansas. And GD Midea has proffered evidence that it hasn't done so.

Plaintiffs haven't controverted any facts from this affidavit. Nowhere do plaintiffs assert (or even allege) that GD Midea conducted activities in Kansas or directed its activities at Kansas. *See generally* Doc. 51 (Am. Compl.). Instead, plaintiffs again ask for jurisdictional discovery,

10

asserting that they contemporaneously filed a motion. Doc. 58 at 1. As already mentioned, the Magistrate Judge denied that motion. Doc. 69. Plaintiffs haven't objected to that ruling. Plaintiffs' nominal efforts—pleading zero jurisdictional facts, failing to controvert GD Midea's affidavits, and aimlessly asking for jurisdictional discovery—can't carry their burden to make a prima facie case of personal jurisdiction. The court thus grants GD Midea's Motion to Dismiss (Doc. 55).

V.     **Conclusion**

Plaintiffs' post-removal amendment to their claim, reducing their requested damages below $75,000, does not divest this court of subject matter jurisdiction, so the court denies plaintiffs' Motion to Remand (Doc. 52). And defendants Midea Group and GD Midea have submitted affidavits showing that they don't have any claim-related contacts with Kansas—affidavits that plaintiffs utterly have failed to counter. The court thus grants Midea Group's Motion to Dismiss (Doc. 53) and GD Midea's Motion to Dismiss (Doc. 55). It dismisses the claims against these defendants without prejudice.[4]

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion to Remand (Doc. 52) is denied.

**IT IS FURTHER ORDERED THAT** Midea Group Co., Ltd.'s Motion to Dismiss (Doc. 53) is granted. The court dismisses all claims against Midea Group Co., Ltd. without prejudice.

---

[4]   When a district court dismisses for lack of personal jurisdiction, its two options are to transfer the action or dismiss it without prejudice. *Trujillo v. Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006). Plaintiffs here haven't requested a transfer, and the court won't order one sua sponte. It's not clear where, exactly, the court could transfer this action such that the transfer would cure the personal jurisdiction defects of this case.

**IT IS FURTHER ORDERED THAT** GD Midea Air-Conditioning Equipment Co. Ltd.'s Motion to Dismiss (Doc. 55) is granted.  The court dismisses all claims against GD Midea Air-Conditioning Equipment Co. Ltd. without prejudice.  Since these rulings—combined with other, earlier rulings—resolve all claims against all defendants, the court directs the Clerk of the Court to close this case.

**IT IS SO ORDERED.**

**Dated this 5th day of September, 2025, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**